MORRIS H. KRONSON

*v.*

ISAAC LIPSCHITZ.

[Decided December 27th, 1904.]

1. Where chattels are by bill of sale vested in one person for the benefit of another, and the latter then takes possession, the trust is executed, and he and those claiming under him will be recognized as the legal owners in courts of law.

2. One may not protect his chattels from execution by causing them to be conveyed to another in trust at the time he buys them.

3. The fact that, in an action involving title to personal property, one of the parties rests his claim on an equitable estoppel is not necessarily a ground for an injunction restraining the action and transferring the litigation to chancery.

On motion for a preliminary injunction to restrain an action at law.

*Mr. John I. Weller,* for the complainant.

*Mr. Michael J. Cannon,* for the defendant.

STEVENSON, V. C. (orally).

I think the only question in this cause is whether the complainant can or cannot have the rights which he sets up in this suit enforced in the court of law in which the action of replevin between these parties is now pending. The defendant, Lip-

schitz, claims title to the machinery by virtue of a bill of sale made in January, 1902. The complainant, Kronson, claims title to the same machinery by virtue of a bill of sale made to him, I think, a year later—in December, 1902—and executed, not by Lipschitz, but by one Meyer Hyman. The complainant claims that Meyer Hyman, his vendor, was the equitable owner of the property and became the equitable owner at the time of the bill of sale from the original owner, the Cosmopolitan company, to Lipschitz—the bill of sale that I have referred to, made in January, 1902. He alleges that Meyer Hyman furnished the consideration for that bill of sale; that Lipschitz paid no part of it; that the bill of sale was made to Lipschitz because Meyer Hyman did not wish to receive title on account of an injunction suit that was pending against him and which would affect his use of the machinery; that Lipschitz, therefore, was a mere cover for Hyman, holding title for him without any beneficial interest whatever. In other words, the insistment of the complainant is that Lipschitz became the passive trustee for Hyman in holding title through this bill of sale to these chattels.

This is not a case where a chose in action is vested in A for the benefit of B; it is not a case where A has money in a savings bank deposited in his name, as trustee, for somebody else. Sometimes that sort of a trust is referred to as a simple or passive trust, but it is manifest that the trustee in all such cases where the subject-matter is a chose in action may have duties. He is the only man to collect; he is the only man with whom the contract is made, and in his name the contract must be enforced. But where you have chattels—machinery—vested by a bill of sale in A for the benefit of B, A has no duties to perform whatever, except to preserve the chattels, in case he receives possession of them, until his beneficiary takes possession. The beneficiary is entitled to possession, and in my judgment the rule of law is that where the beneficiary, under a passive trust of chattels, takes possession of the chattels, then he is the legal owner. The trust is executed and he will be recognized as the legal owner in courts of law. A man cannot protect his chattels from execution, in my opinion, by refraining from having them conveyed to himself when he buys them, and causing them to be conveyed to some

other person in trust for him while he takes possession. Such goods and chattels, I think, are leviable on a judgment of a court of law against the actual owner who is in possession.

It seems to me that the affidavits for the complainant make out just this sort of a case. If these affidavits are true, Lipschitz took a bare legal title without paying a dollar of the consideration and took title for the benefit of Hyman, and at the time of the transaction, or subsequent thereto, Hyman took possession of the goods and chattels and put them into this partnership as his own property, and it makes no difference whether he lent them or whether he turned them in to discharge his obligation to contribute $1,000 of the capital. The result is just the same. He has acquired possession of them and he has transferred the possession of them to these partners. Subsequently he made a bill of sale, and that transferred a legal title, which, in my opinion, every court of law should recognize. I do not think that the courts of law of this state will refuse to recognize this sort of a title which is created through the instrumentality of a passive trust of chattels, where the trustee has no duty excepting to hold title, and possession of the chattels has been transferred to the beneficiary. I cannot hold that a court of law in this state will regard the beneficiary as having any but a full legal title.

There is another branch of this case, another ground suggested on behalf of complainant, upon which to found his prayer for an injunction. It is suggested that there is here presented a foundation for a claim on the part of the complainant, Kronson, that although his legal title, by virtue of his bill of sale and the prior bill of sale in trust, may not be perfect for one reason or another, or may not be recognized in a court of law, yet both Lipschitz and Hyman are barred from asserting any title hostile to his by reason of an estoppel *in pais*—an equitable estoppel—and that presents the question whether, in case an action is pending in which the title to personal property is in question, either party may apply to this court for an injunction to restrain the action and transfer the litigation to this court on the ground that he has a claim which is based upon an equitable estoppel against the other party.

Stating the question otherwise, the question is whether our courts of law will enforce equitable estoppels. It is well settled in this state that courts of law will recognize and enforce equitable estoppels in reference to both real and personal property. I referred a moment ago, during the argument, to the leading case of the *Society for Establishing Useful Manufactures* v. *Lehigh Valley Railroad Co., 32 N. J. Eq. (5 Stew.) 329,* which was decided twenty or twenty-five years ago, in which this matter is discussed in the court of errors and appeals by Chief-Justice Beasley, and the principle is there enunciated that courts of law will recognize equitable estoppels; but, under the peculiar circumstances of that case, the court of errors and appeals held that it was a proper subject of controversy—the particular equitable estoppel set up there—to be determined in a court of equity, and therefore they permitted practically a transfer. But the opinion admits that in all simple cases the courts of law have ample jurisdiction, and in such cases there is no reason why this court should exercise its jurisdiction.

Now, here is a perfectly simple case. I do not think that there is much in the papers here that justifies this claim for an equitable estoppel. However, I have not examined the papers or considered this case in regard to that particular point, and I may be mistaken; but, in any case, the equitable estoppel claim is extremely simple. The court and jury can pass on it just as well as this court can, and I therefore think that, even if the complainant has that leg on which to stand his case, he can sustain his case just as firmly in a court of law as he can here.

Well, it may be said that the court of law may take a different view from that which I have indicated, and that is very true. I referred during the argument to another case—the case of *Borcherling* v. *Ruckelshaus, 49 N. J. Eq. (4 Dick.) 340,* decided in this court and in the court of errors and appeals about ten years ago. In that case an action was pending for mesne profits in a court of law. The defence, at any rate, was set up of an equitable estoppel—an estoppel *in pais.* I may misstate the facts, but the principle I am quite sure I recall with accuracy. The court of law ruled that it could not take cognizance of that equitable estoppel. I think I may say here that probably the

court of errors and appeals regarded this action of the lower court as erroneous. The party who was thus deprived of the benefit of his equitable estoppel then presented a bill in this court to restrain the entry of judgment upon the verdict which had been rendered in the court of law. The bill was demurred to and the order overruling the demurrer was carried to the court of errors and appeals. The insistment was made on behalf of the defendant that the complainant ought to have carried the case from the law court by writ of error to the court of errors and appeals, but it was held that, inasmuch as the equitable estoppel had been excluded from the consideration of the court of law at the instance of the defendant, who was the plaintiff in the action in the law court, this court—the court of equity— would hold that it was *res adjudicata* between the parties that there was no adequate remedy at law—that a court of law could not take cognizance of the particular equitable estoppel presented in that case; and that the complainant was not bound to carry the ruling of the law court to the court of errors and appeals. The decision was that this court would take the law of the case as settled between the parties at the instance of the defendant. That is the gist of the case, and that position was sustained by the court of errors and appeals.

It is very unwise, in my opinion, for a court of equity, where these two systems of law and equity exist side by side, to undertake, where there is any doubt, to say in advance that the jurisdiction of the law court is limited in enforcing equitable estoppels and in dealing with such situations as I considered a little while ago, where there is a passive trust of chattels. A court of equity—this court—ought to be very cautious about adjudicating that the courts of law are not able to expand their remedial agencies. In all cases of doubt, where the law of the state is not settled adversely to the jurisdiction of the courts of law to recognize what are generally termed equitable rights and to grant what are classified as equitable remedies, as a general rule, I do not think that this court, the court of equity of the state, should intervene in a litigation pending in a law court and by an injunction transfer that litigation to this court, on the ground that in this court alone the equitable right of action or of de-

fence can be recognized and enforced. In such cases it seems to me, as a rule, the injunction should be held off until the law court has been heard from.

The whole history of the development of our law of judicial decision shows a constant expansion of the equitable power of courts of law. If you go back far enough you will find that the courts of law had no jurisdiction of vast fields which they now fully occupy, and in which it is not now necessary that courts of equity should intervene.

If this court of law lays down the rule to the jury by which the jury in dealing with the evidence have the power to find the same estoppel *in pais* that can be found and enforced by this court on final hearing, the court of law is the appropriate tribunal where the final decision should be made between the parties. So far as can be ascertained from an examination of these *ex parte* affidavits, it would seem that there must be an enormous amount of lying and perjury on one side or the other of this case. A jury is certainly an appropriate tribunal to deal with this conflict of testimony, and to determine which side is telling the truth—on which side the truth lies.

I was about to say that the whole case here may be tried to a finish between these parties in the law court, and the conflicting evidence may be considered by a jury, and the propositions established by the verdict of a jury, which will determine the rights of these parties. But if the law court should take a different view of its powers and of its jurisdiction from that which I have indicated, then, under the precedent established in the case of *Borcherling* v. *Ruckelshaus,* the complainant can come here and have an injunction restraining the enforcement of the judgment in the court of law, and resulting in bringing about a trial of the equity here which the law court, upon the hypothesis that I have stated, has declined to consider.

Now, it is true we have some old legislation that goes back to a very early period, and which might make trouble in a cause like this. The statute to which I have just referred is section 64 of the present Chancery act (*P. L. 1902 p. 553*), which provides that no injunction shall issue restraining proceedings in a personal action at law after verdict, on application of the

defendant, unless a sum of money is deposited or bond given. This is an old statute which perhaps might well have been modified in the recent revision of the Chancery act.

All hardship in this case may be obviated in this way: I shall advise an order granting an injunction or imposing restraint which will not have the effect to interfere with the prosecution of this present replevin suit until after verdict, and which will enjoin the defendant from proceeding after verdict without the further order of this court. If, then, this replevin suit is tried between the parties, and all their various rights are considered in the law court, and the verdict of the jury deals with all those rights and disposes of them, that will be the end of the matter. Then the plaintiff in the replevin suit, if successful, may apply to this court and get an order as of course vacating the restraint, and permitting the judgment to be entered and execution to issue. If, however, the law court should decide that it could not take cognizance of the various equitable rights set up by the complainant, then the judgment will remain arrested by the injunction which now will be granted, and the suit will proceed in this court. I think in that way all hardship will be obviated.